[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 FACTS
The plaintiff, Perry Taylor, is the owner of property located at 400 Washington Street, Wallingford.
He is the President of the plaintiff Tayco Corporation, which maintains a sand and gravel operation on the site.
The property is located partially within an Industrial Zone, and partially in a Residential Zone (ROR 2), and has been the focus of much contention and litigation between the plaintiffs, and the Town of Wallingford.
The Connecticut Appellate Court, in the matter of Perry Taylor v.Zoning Board of Appeals, 65 Conn. App. 687 (2001), determined that the municipality, in the exercise of its police powers, has the ability to regulate the use of the parcel as a sand and gravel operation, notwithstanding its status as a preexisting, nonconforming use.
The court, in that case, rejected the argument, advanced by the Wallingford Zoning Board of Appeals, that the preexisting nonconforming use of the property was extinguished, when Wallingford enacted zoning regulations making the operation of a sand and gravel facility a permitted use, subject to the special permit process. Perry Taylor v.Zoning Board of Appeals, supra, 692.
In response to the court's decision, the plaintiffs filed a special permit application (ROR 1), accompanied by a proposed site plan.
Public hearings were noticed (ROR 4h), and conducted on January 14, 2002 and February 11, 2002. CT Page 1168
The public hearings generated opposition from nearby residents (ROR 4, p. 8-9; ROR 6, p. 5-6), who complained of the impact of the sand and gravel operation on the use and enjoyment of their property.
Following the February public hearing, the commission voted, 5-0, to deny the plaintiffs' application for a Special Permit for a Fill and Excavation Permit.
In its resolution denying the application, the commission stated four (4) reasons for its actions: (ROR 6, p. 7-8)
 1. Based on the totality of evidence presented during tonight's hearing.
2. The applicants' failure to present a complete application.
3. The failure to comply with handicapped parking regulations.
 4. Failure to secure a Wetlands Permit as potentially required by the Inland Wetlands consultant.
 The applicants withdrew their site plan application prior to the vote (ROR, p. 7).
 Notice of the commission's decision was published on February 15, 2002 (ROR 8).
From the denial of their request for a Special Permit for a Fill and Excavation Permit, the plaintiffs bring this appeal.
AGGRIEVEMENT
The plaintiff Perry Taylor testified that he is the owner of 400 Washington Street, Wallingford, the property which is the subject of the special permit application.
He is also the President of Tayco Corporation, which operates the sand and gravel enterprise on the premises.
Aggrievement is a jurisdictional matter, and a prerequisite for bringing an appeal. Winchester Woods Associates v. Planning ZoningCommission, 219 Conn. 303, 307 (1991).
The question of aggrievement is one of fact, to be determined by the trial court. Primerica v. Planning Zoning Commission, 211 Conn. 85, CT Page 1169 93 (1989); Hughes v. Town Planning Zoning Commission, 156 Conn. 505,508 (1968).
A party claiming aggrievement must satisfy a well established two-fold test: (1) that party must show that he has a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as concern of all members of the community as a whole, and (2) the party must show that the specific personal and legal interest has been specifically and injuriously affected by the decision appealed from. Cannavo Enterprises v. Burns, 194 Conn. 43, 47 (1984); Hallv. Planning Commission, 181 Conn. 442, 444 (1980).
Ownership of the property by the plaintiff Perry Taylor and operation of a sand an gravel concern on the property by the plaintiff Tayco Corporation, represent specific legal interests in the subject matter of the decision.
Denial of the requested special permit by the defendant Wallingford Planning and Zoning Commission has specifically and injuriously affected those interests.
It is therefore found that both plaintiffs are aggrieved by the decision of the Wallingford Planning and Zoning Commission, which is the subject of this appeal.
STANDARD OF REVIEW
A special permit allows a property owner to use his property in a manner expressly permitted by the zoning regulations. A.P. W. HoldingCorporation v. Planning Zoning Board, 167 Conn. 182, 185 (1984).
The terms "special permit" and "special exception" have the same meaning, and can be used interchangeably. Summ v. Zoning Commission,150 Conn. 79, 87 (1962).
When ruling upon an application for a special permit, a planning and zoning commission acts in an administrative capacity, rather than in a legislative or quasi-judicial capacity. Irwin v. Planning ZoningCommission, 244 Conn. 619, 627 (1998); Farina v. Zoning Board ofAppeals, 157 Conn. 420, 422 (1969).
Acting in this administrative capacity, the commission's function is to determine whether the applicant's proposed use is expressly permitted under the zoning regulations and whether the standards set forth in the regulations have been satisfied. A.P. W. Holding Corporation v. PlanningCT Page 1170 Zoning Board, supra, 185. The conditions under which a special exception is allowed must be found in the regulations themselves. Beckishv. Planning Zoning Commission, 162 Conn. 11, 15 (1971).
Although a special exception allows a property owner to use his property in a manner permitted by the zoning regulations, a permit must be obtained, because the nature of the use is such that its exact location and operation must be regulated, due to the unique topography, traffic problems and neighboring uses. Barberino Realty DevelopmentCorporation v. Planning Zoning Commission, 222 Conn. 607, 612
(1992). However, the special permit process is not purely ministerial. The commission may properly determine whether general standards in the regulations have been met. Irwin v. Planning Zoning Commission, supra, 627.
Enumerated general conditions, such as public health, safety and welfare may form the basis of the denial of a special permit. WhisperWind Development Corporation v. Planning Zoning Commission,229 Conn. 176, 177 (1994).
The commission may properly consider issues which impact the surrounding neighborhood. Barberino Realty Corporation v. Planning Zoning Commission, supra, 613.
An agency may state specific conditions of approval concerning a special permit, pursuant to § 8-2[1] of the General Statutes.
These conditions must relate to public health, safety and welfare, and the authority to impose conditions can not be exercised to attach conditions for other purposes. Whisper Wind Development Corporation v.Planning Zoning Commission, 32 Conn. App. 515, 528 (1993); Robert A. Fuller, Land Use Law and Practice (second edition), § 21.9 p. 465-466 (1999).
When acting on a special permit or special exception application, the commission is endowed with liberal discretion, and its action is subject to review by a court only to determine whether it is unreasonable, arbitrary, or illegal. Schwartz v. Planning Zoning Commission,208 Conn. 146, 152 (1988).
On factual questions, a reviewing court can not substitute its judgment for that of the municipal agency. Timber Trails Corp. v. Planning Zoning Commission, 222 Conn. 380, 401 (1992).
Where, as here, a commission has stated reasons for its action, a CT Page 1171 reviewing court should not go beyond the official collective statement and attempt to search out and speculate upon other reasons which might have influenced some or all of the members of the commission to reach the commission's final collective decision. DeMaria v. Planning ZoningCommission, 159 Conn. 534, 541 (1970); West Hartford InterfaithCoalition, Inc. v. Town Council, 228 Conn. 498, 513 (1994); Cybulski v.Planning Zoning Commission, 43 Conn. App. 105, 111 (1996).
The agency's decision must be sustained, if an examination of the record discloses evidence that supports any one of the reasons given.Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 539-40
(1987).
THE POWER TO REGULATE SAND AND GRAVEL OPERATIONS AT 400 WASHINGTON STREETIS SUBJECT TO A PREEXISTING NONCONFORMING USE
The plaintiffs contend that 400 Washington Street, Wallingford, is subject to a preexisting, nonconforming use, but acknowledge the right of the defendant Wallingford Planning and Zoning Commission to regulate their activities, under the town's police powers.
The defendant refused, at trial, to concede the existence of a nonconforming use, notwithstanding the Appellate Court decision in PerryTaylor Et Al. v. Zoning Board of Appeals, supra.
The defendant's position is in direct contradiction to both the decision of the Appellate Court, and the representations made to the Court that the use of the property for sand and gravel operations, at the time of the enactment of zoning regulations, rendered the use legally nonconforming. Perry Taylor, Et Al. v. Zoning Board of Appeals, supra, 690.
In Perry Taylor, the Appellate Court, in its recitation of the "undisputed facts", stated that as early as 1942, and continuing to the present, the property had been utilized by the plaintiffs and their predecessors in title, for sand and gravel operations.
As part of those operations, the Court noted that the activities included "the screening, storing, excavation, stockpiling and selling of earth products, and . . . the sale of landscaping material." PerryTaylor, Et Al. v. Zoning Board of Appeals, supra, 690.
The Court observed that the use of the property began prior to 1958, when the Town of Wallingford adopted zoning regulations. CT Page 1172
After reciting the agreement of the parties that the property had been used for sand and gravel operations prior to the adopting of zoning regulations, the court underscored the property's status, declaring that a preexisting nonconforming use "could readily be inferred from the fact that, from the enactment of the town zoning laws in 1958 until 1998 when the cease and desist order . . . was issued, the town's zoning official made no effort to, stop or otherwise hinder the plaintiffs' use of their property for sand and gravel operations, notwithstanding that the property was partly in a residential zone." Perry Taylor, Et Al. v. Zoning Boardof Appeals, supra, 693.
The defendant's assertion that 400 Washington Street is not subject to a preexisting, nonconforming use, is unavailing, and somewhat disingenuous.
Nonconforming uses enjoy the protection of the General Statutes, even in the absence of a provision in the municipal zoning ordinances. D J Quarry Products, Inc. v. Planning Zoning Commission,217 Conn. 447, 454 (1991).
Section 8-2 of the General Statutes provides explicit recognition of and protection for lawful nonconforming uses.
 ". . . such regulations shall not prohibit the continuance of any nonconforming use . . . existing at the time of the adoption of such regulations. Such regulations shall not provide for the termination of any nonconforming use solely as a result of nonuse for a specified period of time without regard to the intent of the property owner to maintain that use."
A nonconforming use has two characteristics: (1) it must be a lawful use, and (2) it must have been in existence at the time the zoning ordinance or regulation making it nonconforming was enacted. Cummings v.Tripp, 204 Conn. 67, 91-92 (1987).
The use of 400 Washington Street, as described by the Appellate Court, easily satisfies that test.
Where, as here, a nonconformity exists, it is a vested right, which adheres to the land itself. A valid nonconforming use is a property right, and is entitled to constitutional protection. Petruzzi v. ZoningBoard of Appeals, 176 Conn. 479, 483-84 (1979).
However, the determination that the plaintiffs enjoy a preexisting CT Page 1173 nonconforming use does not end the inquiry.
Uses which have been established as nonconforming uses are not exempt from all regulation by virtue of that status. A municipality may regulate a nonconforming use under its police powers, provided it does not abrogate such a right in an unreasonable manner, or in a manner not related to the public interest. Ammirata v. Zoning Board of Appeals,65 Conn. App. 606, 614 (2001).
The Appellate Court's finding in Perry Taylor Et al. v. Zoning Board ofAppeals, supra, 698, that requiring the plaintiffs to obtain a permit was a reasonable regulation of a nonconforming use, prompted the application which is the subject of this appeal.
It is therefore necessary to consider whether any reason provided in support of the rejection of the application is valid.
Any regulation undertaken pursuant to the municipality's police powers must be in the public interest, and must both recognize and respect the existence of a valid nonconforming use.
THE REASONS GIVEN FOR REJECTION OF THE SPECIAL PERMIT APPLICATION AREINSUFFICIENT TO SUPPORT THE ACTION OF THE COMMISSION
The defendant Wallingford Planning and Zoning Commission provided four reasons in support of its decision to deny the plaintiffs' special permit application: (ROR 6, p. 7-80.
1. The totality of the evidence presented during tonight's hearing.
2. The applicant's failure to present a complete application.
3. The failure to comply with handicapped parking regulations.
 4. Failure to secure a Wetlands Permit as potentially required by the Inland Wetlands consultant.
The reasons, viewed either individually or collectively, are not sufficient to sustain the commission's decision.
The first reason given, the "totality of evidence" represents a conclusion, without reference to any specific evidence received during two public hearings.
No evidence was presented demonstrating that the application was CT Page 1174 incomplete.
The application was accepted by the commission, and hearings were held, without any indication that the required application was not filed.
Furthermore, this reason does not relate to the public welfare, the only basis upon which regulation may occur.
The issue of handicapped parking spaces was raised during the February 11, 2002 hearing (ROR 6, p. 4).
It was indicated that handicapped parking spaces would be designated by the applicant, and included in any site plan. The defendant commission acknowledges in its brief, (p. 9) that the site plan is the appropriate document on which to indicate parking spaces.
Although handicapped parking spaces were omitted from the site plan, the commission has the authority to require those spaces as a condition of approval.
Furthermore, the site plan was withdrawn prior to the commission's vote, and only the special permit application was voted on.
This reason is, therefore, insufficient to justify rejection of the special permit.
The final reason stated by the commission is that the plaintiffs failed to secure a permit from the municipal wetlands authority.
The commission speculates that a permit might be "potentially required" in light of the application.
The record reveals that no wetlands application accompanied five prior applications by the plaintiffs, and the commission made no express finding that approval of the wetlands agency would be required, based upon the site plan before it.
Section 8-3c (a) of the General Statutes, requires an applicant for a special permit to "submit an application to the agency responsible for administration of the inland wetlands regulations not later than the day the application is filed for a special permit or special exception."
The commission, in its reasons, did not reference failure to comply with the statute, although the commission has raised the issue in its CT Page 1175 brief.
The commission cites no authority for the proposition that compliance with the statute is jurisdictional, and that failure to comply with its terms divests the commission of jurisdiction to hear the application.
The requirements of the statute are procedural in nature.
The final reason can not serve as a basis for the rejection of a special permit application, in that it is not a reason related to public health, safety and welfare.
CONCLUSION
Because the defendant Wallingford Planning and Zoning Commission has failed to state valid reasons for its rejection of the plaintiffs' special permit application, the appeal must be sustained.
The commission is directed to issue a special permit to the plaintiffs, subject to such reasonable conditions related to public welfare, as it deems appropriate.
The record compiled during the public hearings held on January 14, 2002 and February 11, 2002, should be sufficient for that purpose.
Because the plaintiffs' site plan application was withdrawn, and is not the subject of this appeal, the commission may require submission of a site plan, and the accompanying public hearing.
The court does not decide whether the Wallingford inland wetlands authority requires a permit, in order for the plaintiffs to conduct either a regulated activity, or any activity within established buffers.
It should also be emphasized that the power to adopt reasonable regulations is applicable to conforming and to nonconforming uses alike.Russo v. East Hartford, 179 Conn. 250, 257 (1979).
Nor does the status of any property as one benefitted by a nonconforming use insulate it from allegations that activities conducted on that property constitute a common law nuisance. Pesty v. Cushman,259 Conn. 345, 360-61 (2002); Maykut v. Plasko, 170 Conn. 310,317 (1976).
The appeal of the plaintiffs, Tayco Corporation and Perry Taylor, is SUSTAINED. CT Page 1176
 ___________________ RADCLIFFE, J.