[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs' appeal a decision of the Zoning Board of Appeals for the City of Bridgeport, upholding the decision of the local zoning enforcement officer who granted a Certificate of Zoning Compliance to the defendant Sacred Heart University, Inc. for the construction of a ten story building containing dormitory rooms and classrooms. The dormitory-classroom building is to be constructed at the premises known as 4940 Park Avenue, Bridgeport, Connecticut, which is currently a Residential A Zone, pursuant to the City of Bridgeport Zoning Regulations, Chapter 4, § 2(e) and Chapter 16 § 3(k).
The decision of the Zoning Board of Appeals, hereinafter referred to as the Board, was dated April 17, 1996, and it was CT Page 4627 published in the Connecticut Post newspaper on April 21, 1996. The Connecticut Post is a newspaper having substantial circulation within the City of Bridgeport.
The decision of the Board denied the plaintiffs' appeal on two grounds. The first ground stated by the Board was that the petition by the plaintiffs appealing the decision of the Zoning Enforcement officer was not filed in a timely manner based on a December 1, 1996 Certification of the "Application for a Certificate of Zoning Compliance." Having decided that the plaintiffs' petition to the Board was filed untimely, the Board, nevertheless, then proceeded to decide the plaintiffs' petition on its merits, and assigned an additional reason for denying said petition. The Board in its decision stated that the dormitory-classroom building to be constructed by the defendant Sacred Heart University, Inc. was a permitted use in a Residence A Zone, as it is a use clearly incident to the conduct of a college or university use under Chapter 4, § 2, (e) of the ZoningRegulations, and did not constitute an accessory use or accessory building as defined in Chapter 14, § 1 of said ZoningRegulations of Bridgeport.
The Zoning Board of Appeals had the power to review the decision of the Zoning Enforcement Officer pursuant to Connecticut General Statute § 8-6.
This appeal by the plaintiffs is brought pursuant to Connecticut General Statutes § 8-8.
The record of the proceedings submitted to the Court reveals the following facts and chronological order of events. On July 18, 1995, in anticipation of construction of a dormitory-classroom building at 4940 Park Avenue, Bridgeport, Connecticut, the defendant Sacred Heart University inquired of the zoning enforcement officer for the City of Bridgeport, as to whether the construction of this type of building in a Residence A Zone, would be a permitted use pursuant to Chapter 4, § 2(e)and Chapter 16 § 3(k) of the Bridgeport Zoning Regulations. (Exhibit E.) Chapter 4 contains the Residence A Zone Regulations. Section 2(e) of Chapter 4 states that permitted use is:
 Public or parochial schools and colleges or universities, including such buildings and educational uses as are clearly incident to the conduct of a college or university. CT Page 4628
Chapter 4 § 2(e) further states as follows:
 Except as same shall be permitted by the Zoning Board of Appeals as a special exception, this provision shall not, however, extend to or permit the construction of any athletic field, sports stadium, or gymnasium, or the maintenance of any parking facility except on a lot upon which there exists a major building devoted to college or university purposes.
Chapter 16, Sec 3(k) regarding Off-Street Parking Requirements states that for each college or university dormitory, 150 square feet of parking space for every three bedrooms must be allocated. In response to defendant, Sacred Heart's inquiry, the zoning enforcement officer solicited an advisory opinion from the Bridgeport City Attorney's office, who advised the zoning enforcement officer on August 11, 1995 that the dormitory-classroom was a permitted use under the Zoning Regulations given a reading of the Zoning Regulations and "prior interpretation" of these Regulations. (Exhibit El) On August 14, 1995, the City Planning Engineer informed Sacred Heart University's attorney that the dormitory classroom use being proposed in a Residence A zone, was a permitted use, pursuant to the Bridgeport Zoning Regulations.(Exhibit E)
Thereafter, on or about November 27, 1995, the defendant Sacred Heart University submitted an application for a Building Permit (Exhibit G) for a "foundation only for classrooms and East Hall Dormitory". The value of the work to be performed was stated as $450,000.00 foundation only. The Building Department estimate for the foundation only, was listed on the application as $1,123,350.00. The Building Department assessed a building fee and occupancy fee in the amount of $15,760.00. The Court notes that the dimensions section of the application form submitted by Sacred Heart University lists the number of stories for the building as "foundation".
This Building Permit Application was stamped "Zoning Approval for Zoning Compliance Only" on December 1, 1995, and for Engineering Approval on December 4, 1995. The Building Permit issue date was January 3, 1996 and carried the number 14904. (Exhibit A) CT Page 4629
This Building Permit was granted for permission to erect a foundation only, and carried a written warning on its face that there was no assurance that a permit for the entire structure would be subsequently granted.
Concurrent with this application process for a Building Permit the defendant, Sacred Heart, also requested a Certificate of Zoning Compliance for the erection of a ten story dormitory-classroom building at the subject premises. This approval for Zoning Compliance Only was granted by Mr. Shaw the City Planning Engineer on December 1, 1995. (Exhibit H)
On or about January 16, 1996, Sacred Heart submitted a second application for a Building Permit "to construct a ten story, 113,000 square feet Residence Hall and Classrooms on the subject premises. (Exhibit F) The application further stated that it is to "Erect East Residence Hall superstructure, " The value of the work to be performed was stated as $6,365,650.00. The building fee to be assessed was $89,138.00.
This second application was approved for Zoning Compliance Only, by the Zoning Department on February 2, 1996 and carried a notation on its face that the "Plans" were approved on March 22, 1996. The Engineering Department approved it on February 5, 1996. Building Permit No. 14957 (Exhibit B) was issued by the Building Department on March 22, 1996 to erect the superstructure for Classrooms and Dormitory."
On February 29, 1996, the plaintiffs filed a petition to the Zoning Board of Appeals for the City of Bridgeport, appealing from a decision of the Zoning Enforcement Officer, who stamped the second application for a building permit as "approved for Zoning Compliance Only." The plaintiffs did not appeal the "zoning compliance only" certification on the initial Building Permit Application, nor did they appeal the issue of a Certificate of Zoning Compliance issued to the defendant, Sacred Heart University by Mr. Shaw, City Planning Engineer, on December 1, 1995. The plaintiffs did appeal the Zoning Enforcement Officers approval for zoning compliance only dated February 2, 1996, which was stamped on the second building permit application, which was for the construction of the ten story dormitory-classroom building.
After notice to the plaintiffs, and a notice, of hearing published in the Connecticut Post on March 28, 1996, the Zoning CT Page 4630 Board of Appeals commenced a public hearing on April 9, 1996 regarding the plaintiff's petition. Testimony was given before the Board and the Board recessed the hearing to a later date April 17, 1996, when the Board rendered its decision. Notice of the Board's decision was given to the plaintiffs on April 22, 1996.
The plaintiffs subsequently filed their appeal to the Superior Court on May 6, 1996 challenging the Zoning Board of Appeal's decision that their petition to the Board was filed in a untimely manner, and that the construction of a dormitory-classroom by the defendant Sacred Heart University was a permitted use in a Residence A Zoning pursuant to the Zoning Regulations of Bridgeport. The plaintiffs, additionally, have pleaded statutory aggrievement pursuant to Connecticut General Statutes § 8-8 (a)(1), in that they are owners of real property which abuts the property which is the subject of this appeal.
In deciding the merits of an appeal the Court must first determine whether the plaintiff are "aggrieved persons" as defined by Connecticut General Statutes § 8-8 (1) which reads as follows:
 "Aggrieved person" means a person aggrieved by a decision of a board and includes any officer, department, hoard or bureau of the municipality charged with enforcement of any order, requirement or decision for the board. In the case of a decision by a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, "aggrieved person" includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board.
At an aggrievement hearing held in the Superior Court on December 8, 1997, the plaintiff Jack Halpert appeared and testified that he was a co-owner of real property at 123 Nancy Drive, Bridgeport, Connecticut, which directly abuts the subject premises at 4940 Park Avenue, Bridgeport, Connecticut. He testified that the subject property adjoins the backyard of his property. He further testified that he has been a co-owner of said property, with his wife Sylvia Bessie Halpert, since 1959. The Court notes that this testimony is consistent with the testimony at the Zoning Board of Appeals hearing on April 9, 1996, at which time a copy of a real estate property tax bill listing the plaintiff Jack Halpert as a co-owner of 123 Nancy Drive, Bridgeport Connecticut was accepted into evidence. Said CT Page 4631 tax bill was also introduced into evidence at the court hearing on December 8, 1997 (Plaintiff's Hearing Exhibit B). Further the plaintiffs at the hearing in Court submitted a copy of their warranty deed dated January 29, 1959 which was marked as plaintiff's hearing Exhibit A.
Absent any evidence to the contrary from the defendants, the Court finds that the plaintiffs are "Aggrieved Persons" as defined by Connecticut General Statutes § 8-8 (1).
The first issue addressed in the plaintiffs appeal is whether the plaintiffs' appeal to the Zoning Board of Appeals regarding the enforcement officer's action on February 2, 1996, was filed on a timely basis. As recited earlier in this decision, on February 2, 1996 the zoning enforcement officer indicated on the face of the second application for a building permit that construction of the ten story superstructure for the dormitory classroom building was in compliance with the municipal zoning regulations. The plaintiffs claim that there were two phases to this application process, as one application was for the foundation only, and the second phase was for the construction of the superstructure. The plaintiffs, therefore argue that their appeal from the finding of zoning compliance by the zoning enforcement officer for the second application filed by the defendant, Sacred Heart is the operative date for the filing of their appeal.
The defendant Sacred Heart University, Inc. argues that the plaintiffs' position is flawed, in that there was but one Application for a Certificate of Zoning Compliance, that being the action of the Zoning Enforcement Officer on December 1, 1995. It is the defendant, Sacred Heart's position that the Certificate of Zoning Compliance, dated December 1, 1995, considered and sanctioned not only the construction of the "foundation only," but also the construction of the ten story superstructure for the dormitory-classroom building. Therefore, the plaintiffs' petition to the Zoning Board, being more than thirty days following the action of the zoning enforcement officer, was filed in an untimely basis.
The defendant, Zoning Board of Appeals in its Memorandum of Law, argues that the plaintiffs' appeal was not timely filed. However at oral argument, counsel for the defendant, Board argued that upon further review, the plaintiffs' appeal was timely filed. CT Page 4632
The Zoning Board of Appeals of the City of Bridgeport has not established a time period for the appeal of a decision of the Zoning Enforcement Officer. In the absence of a procedural rule, the Connecticut General Statutes § 8-7 requires than an appeal of any order of a zoning official must be made within thirty days of the exercise of that order. A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created. Forricelli v. Personnel AppealBoard, 186 Conn. 198, 201 (1982); Bridgeport Bowl-O-Rama, Inc. v.Zoning Board of Appeals, 195 Conn. 276, 283 (1985). Chapter 21, § 2 of the Bridgeport Zoning Regulations gives the Zoning Board of Appeals the authority to hear and decide appeals "where it is alleged that there is an error in any order, requirement or decision of the Zoning Enforcement Officers in their capacity as the officials charged with enforcement of these regulations," as does Connecticut General Statutes § 8-6 (a)(1).
The Court agrees with the plaintiffs that the affixing of a "Approved for Zoning Compliance Only" notation to the second application for a Building Permit by the Zoning Enforcement Officer on February 2, 1996 falls within the definition of "any" as stated in Connecticut General Statutes § 8-6 (a)(1) and Chapter 21 § 2 of the Bridgeport Zoning regulations. (Defendant's Hearing Exhibit 1)
Webster's Seventh New Collegiate Dictionary (1967) defines the word "any" as "one, some or all without restriction of whatever quantity." As a noun it is defined as "anything or things, any part, quantity or number." The defendant Sacred Heart argues that the Certificate of Zoning Compliance on December 1, 1995 was the only act that could be appealed to the Zoning Board of Appeals, and that the "approval for zoning compliance only" notations on the two Applications for Building Permits were merely functions that required no further decisions, order or requirement of the zoning enforcement officer. The defendant, Sacred Heart cites Chapter 22 § 6 of the Zoning Regulations stating that no building permit can be issued until an Application for a Certificate of Zoning Compliance is made and a certification obtained from the Zoning Officer on the Building Permit Application that "the erection, reconstruction or structural alteration of the building or structure described in the application therefore and in any accompanying plan and specifications will comply with the requirements of these regulations. As noted earlier, the two Applications for Building Permits submitted by the defendant, Sacred Heart varied greatly CT Page 4633 in their content. The initial application stated very clearly that it was for a foundation, while the second application, which is the subject of this appeal, stated that it was for the construction of the 113,000 square foot East Residence Hall superstructure.
The defendants chose to submit two applications for this proposed project, when they needed to submit only one. They chose to pay the assessed building fees in two stages rather than one. Chapter 22 § 6 required that certification by the zoning enforcement officer was required on each application, as each application described a different "building or structure". It is also noted that two different Building Permits were issued each carrying a different permit number. Clearly, the differences in the information contained on the two Applications for Building Permits were significant and not minor. In Koepke v. Zoning Boardof Appeals, 230 Conn. 452 (1994), the Court ruled that "subsequent applications made to bring a prior application into compliance with applicable regulations, no matter how minor the work involved may be, is clearly not minor in regard to its significance and effect", and, thus, agreed with the dissent inKoepke v. Zoning Board of Appeals, 30 Conn. App. 405
(Freedman, J. dissenting).
A zoning ordinance is a local legislative enactment, and in its interpretation the question is the intention of the legislative body, as found from the words employed in the ordinance. Fox v. Zoning Board of Appeals, 146 Conn. 70, 73
(1958). The words employed are to be interpreted in their natural and usual meaning. State Ex Rel. Higgins v. Civil ServiceCommission, 139 Conn. 102, 114 (1952), Lawrence v. Zoning Boardof Appeals, 158 Conn. 509 (1969). "When interpreting regulations, if the provisions are reasonably clear, we need not engage in further construction to ascertain their meaning Diamond v.Marcinek, 226 Conn. 737, 744 (1993), University of Connecticut v.Freedom of Information Commission, 217 Conn. 322, 328 (1991).
The Court, therefore concludes that the certification of "zoning compliance only" was necessary on each Building Permit Application. Thus, when the zoning enforcement officer affixed this certification to the second building permit application on February 2, 1996, a new thirty day period for the plaintiff to file an appeal to the Zoning Board of Appeals, commenced. The plaintiffs' petition, dated February 29, 1996, to the Zoning Board of Appeals did constitute a timely filing of an appeal of CT Page 4634 the action of the zoning enforcement officer on February 2, 1996.
Before leaving this issue the Court wishes to address the defendant Board's change of position at the aggrievement hearing before the Court on December 8, 1997. In its Memorandum of Law the Board appears to be noncommittal as to whether the appeal was filed on a timely basis or not. It argues on one hand that if the Court determines that the December 1, 1995 certification of zoning compliance is the only certification necessary then the plaintiffs' appeal is not timely. However, the defendant Board then argues that if the February 2, 1996 certification on the second Building Permit Application was necessary, then the plaintiffs' appeal was timely. At oral argument on December 8, 1996, counsel for the defendant Board argued that based on the decision in Loulis v. Parrott, 241 Conn. 180 (1997) regarding notice issues, the plaintiffs' appeal to the defendant Board is now timely. (T.4, T.5). The Court disagrees with the position of the defendant Board's counsel that Loulis v. Parrott,241 Conn. 180 (1997), affects this matter, and agrees with the Court's decision in Phillips v. Darien Zoning Board of Appeals, Superior Court at Stamford, No. CV950146847S filed August 7, 1997, CONN. L. RPTR. No. 7, 257 (November 3, 1997). In that case the court reasoned that Loulis v. Parrott, supra 241 Conn. 180, concerned whether injunctive relief may be available to a person who fails to exhaust administrative. remedies when he did not have the notice necessary to seek timely review of the administrative decision. The instant case, as in Phillips v. Darien Zoning Boardof Appeals, supra, involves a jurisdictional question based on whether the Bridgeport Zoning Board of Appeals had the authority to review the zoning enforcement officer's decisions based on a claim that no appeal was taken within thirty days. The Court inLoulis v. Parrott, supra, did not impose a notice requirement for decisions of zoning enforcement officers and reiterated that Connecticut General Statutes § 8-7 states that said thirty day appeal period begins to run from the date of the zoning enforcement officer's decision, not the date from the receipt of any notice of the decision.
The Court notes that counsel for the defendant Board argued that the plaintiffs' appeal is timely (T.4, T.5), and even though the Court disagrees with the reasons for the change of position, "judicial admissions are voluntary and knowing concessions of fact by a party or a party's attorney occurring during judicial proceedings. . . . They excuse the other party from the necessity of presenting evidence on the fact adnutted and are conclusive on CT Page 4635 the party making them. . . to the extent that they dispense with evidence, they are similar to facts judicially noticed." Cole v.Planning and Zoning Commission, 30 Conn. App. 511, 513, 514
(1993). "A party is bound by a concession made during the trial by his attorney. Housing Authority v. Pezenik, 137 Conn. 442, 448
(1951).
The Court hereby concludes that the plaintiffs' appeal to the defendant Zoning Board of Appeals on February 29, 1996, was filed in a timely manner.
The plaintiffs next argue that when the defendant Zoning Board of Appeals found the plaintiffs appeal was not timely filed, the defendant Board lacked jurisdiction to address the merits of the appeal. The plaintiffs further argue that should this Court finds that their appeal was timely filed, the matter must then be remanded to the Zoning Board of Appeals for reconsideration of the merits of the appeal. The defendant Sacred Heart and the defendant Board argue that if the appeal is found to be timely, the decision by the Board to the contrary was harmless error.
The plaintiff's cite and Cole v. Planning Zoning Commission,30 Conn. App. 511 (1993), in support of their position. In that case, the trial court found that the plaintiffs were not aggrieved and therefore the trial court lacked jurisdiction to hear the appeal. Nevertheless, the trial court went on to state that even if the plaintiffs had been aggrieved, they could not establish the merits of their claims. The Appellate Court concluded that once the trial court found it lacked subject matter jurisdiction to hear the appeal on the merits because the plaintiffs were not aggrieved, the Court was without authority to decide the case on the merits. The conclusions of the trial court in this regard, therefore, were a nullity. The plaintiffs go on to cite Fuller v. Planning and Zoning Commission,21 Conn. App. 340, 346 (199); State v. State Employees Review Board,231 Conn. 391, 400 (1994) for this position.
Significantly, in cases the plaintiffs cite, the decisions considering the merits of a case despite a finding of lack of jurisdiction were rendered by judges well versed in the law, and not as in this case by an administrative zoning board composed of laymen. That such Boards are typically made up of laymen and that their proceedings are informal is well recognized. Norooz v.Inland Wetlands Agency, 26 Conn. 564, 569 (1992). CT Page 4636
 It must be borne in mind, however that we are dealing with a group of laymen, who may not always express themselves with the nicety of a Philadelphia lawyer. Courts must be scrupulous not to hamper the legitimate activities of civic administrative boards by indulging in a microscopic search for technical infirmities in their actions.
Couch v. Zoning Commission, 141 Conn. 349, 358 (1954).
As this Court has found that the appeal was timely filed, unlike the cases cited by the plaintiffs, this Court finds that there is no great harm to the plaintiffs in proceeding to decide the remaining merits of their claim. To remand the matter back to the Zoning Board of Appeals would cause great delay, and little doubt, an appeal back to this Court after a second hearing before the defendant Board.
The final issue to be decided is the plaintiffs' claim that the zoning enforcement officer erred in determining that the defendant Sacred Heart's proposed building complies with theBridgeport Zoning Regulations. The plaintiffs contend that a college dormitory classroom building, if a permitted use, is only allowed as an accessory use in conjunction with a college or university, the latter being the principal use. Additionally, they claim that the accessory use can only be allowed if it is located in the same parcel of property with the principal use and if it is located in the same municipality with the principal use. The proposed dormitory-classroom building would be in Bridgeport, while Sacred Heart University, located across the street, is in Fairfield.
The defendant Zoning Board of Appeals in its decision found that the dormitory classroom building in question is a use clearly incident to the conduct of a college or university use, which is listed as a permitted use under Chapter 4, § 2(e) and does not constitute an accessory use or accessory building under chapter 14, § 1 of the Bridgeport Zoning Regulations. The defendants Board and Sacred Heart University argue that substantial evidence exists to support the Board's decision.
Earlier in this decision the Court cited the language of Chapter 4 § 2(e) of the Bridgeport Zoning Regulations
regarding residence A Zone Regulations. Section 2(e) stated that permitted uses included a college or university, including such CT Page 4637 buildings and educational uses as are clearly incident to the conduct of a college or university. Section 2(e) specifically excluded such things as an athletic field, sports stadium, gymnasium or parking facility, except on a lot upon which there exists a major building devoted to college or university purposes. It does not exclude by its language a dormitory or classrooms and nor, does it provide the same provision that it be on the same lot as a major building devoted to a college or university.
Chapter 14 of the Zoning Regulations concerns Accessory Use Limitations. Chapter 14 § 1 defines an accessory use "to be a subordinate use, customarily made of property located in a residence zone in connection with the residential use or a residence building located thereon. An accessory building is defined to be a building, detached from the main residence building to which it is an accessory, which is subject to an accessory use or which is arranged, intended or designed for such use."
Chapter 14, § 2, titled "Exclusions" states that the term "accessory use" as used in these regulations shall not include or permit the use of property or any part thereof for any of the following purposes." In listing accessory uses not permitted specifically, colleges, universities and schools are never mentioned. Additionally, § 2(d) specifically allows signs by schools, subject to size limitations, hereby implying that schools, colleges and universities were contemplated in a residential zone as a permitted use as stated in Chapter 4, 2(e).
In reviewing a decision of the board, a trial court has to decide whether the Board correctly interpreted the regulations, and applied it with reasonable discretion to the facts Pascale v.Zoning Board of Appeals, 150 Conn. 113.
These regulations must be interpreted in accordance with the ordinary rule of statutory construction, that where the language of the statute is clear and unambiguous, courts cannot by construction read into the statutes provisions which are not clearly stated. Harlow v. Planning and Zoning Commission,194 Conn. 187, 193. In addition words employed in zoning ordinances are to be interpreted in accord with their natural and usual meaning. Lawrence v. Zoning Board of Appeals, 158 Conn. 509, 511
(1969), Schwartz v. Planning and Zoning Commission, 208 Conn. 146
(1988). CT Page 4638
Chapter 4, § 3 of the Residence A Zone Regulations states that no college or university building shall exceed ten stories or 120 feet in height. Except for hospitals colleges or universities, no other buildings may exceed 2 2/12 stores or 35 feet in height. In determining whether a particular use is permitted, or non-conforming the question is one of expressed intent as stated in the zoning regulations, which are basically legislative enactments. The intent must be found from the intent expressed in the regulations, construed as a whole. Melody v.Zoning Board of Appeals, 158 Conn. 516, 519 (1969). By expressly permitting college and university buildings, not exceeding ten stores in height in a Residence A Zone, the local legislative body through their zoning regulations have intended to give a college or university the status of a permitted use. Melody v.Zoning Board of Appeals, supra at p. 522. "Zoning regulations should not be extended by construction beyond the fair import of their language and cannot be construed to include by implicating that which is not clearly within their express terms. Dowling v.Zoning Board of Appeals, 187 Conn. 689, 694 (1982).
Webster's Collegiate Dictionary (1996) defines college as "the building or buildings occupied by an institution of higher learning." It defines university as "an institution of higher learning of the highest level authorized to confer graduate and undergraduate degrees," as well as, "the buildings and facilities of such an institution." Dormitory is defined as "a building at a college containing rooms and facilities for residents, and classroom as "a room in a school or college, in which classes are held."
In Yale University v. New Haven, 71 Conn. 316 (1899), Justice Hamersley defined dormitories and dining halls as college buildings. Constas v. Planning and Zoning Board of Greenwich etal., Docket No. CV89-0104251, 1991 WL 32023 (Conn. Super February 5, 1991) relied on the Yale University case to equate "dormitory" with a college or university building. In Yale University v. NewHaven, 71 Conn. 316 (1899), Justice Hamersley further wrote:
 And so at the beginning of the 17th century the students of an English university lived in colleges, were instructed and governed through colleges, whether the university included a number of colleges or a single college; and among the buildings indispensable for every college were the great hall or dining room, and the living rooms or dormitories. CT Page 4639
The precise language of Chapter 4 § 2(e) and the reading of the zoning regulations as a whole convinces the Court that a dormitory-classroom building is incidental to the operation of a college or university and is specifically permitted, and not accessory. Accessory use as defined in Chapter 14 of the zoning regulations speaks of a subordinate use of property located in a residence zone in connection with the residential use of a residence building. An accessory building assumes, as the defendant Sacred Heart argues, the existence of a main residential building.
A review of the record shows that the zoning enforcement officer solicited an opinion from the Bridgeport City Attorney's office regarding compliance with the zoning regulations before issuing a "Certificate of Zoning Compliance" to the defendant, Sacred Heart, and before he certified "Approval for Zoning Compliance Only" on both Building Permit Applications. The plaintiff attacks the zoning enforcement officer's actions in certifying zoning compliance. A Court reviewing the decision of the Zoning Board of Appeals must focus, however, not on the zoning enforcement officer's decision, but on the decision of the Board, and the record before the Board. Caserta v. Zoning Boardof Appeals, 226 Conn. 80 (1993).
A review of the record indicates that the Zoning Board of Appeals had testimony from the architect for the building; Mr. Buckley the Zoning Enforcement Officer; William Shaw, City Planning Engineer, and the plaintiffs. They heard arguments from attorneys for all parties. In addition, they had numerous evidentiary documents and photocopies of legal cases. They also heard testimony regarding precedence in the City of Bridgeport, as it applied to the University of Bridgeport, which is comprised of many separately developed lots. "The settled standard of review of questions of fact determined by a zoning authority is that a court may not substitute its judgment for that of the zoning authority, as long as it reflects an honest judgment reasonably exercised, with substantial evidence to sustain its reasons." Torsiello v. Zoning Board of Appeals, 3 Conn. App. 47,49 and Connecticut Health Facilities v. Zoning Board,29 Conn. App. 1, 9, 19 (1992). "Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached." DeBeradinis v. Zoning
CT Page 4640Commission, 228 Conn. 187 (1994) citing Calandro v. ZoningCommission, 176 Conn. 439, 440 (1979). "Decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercise after a full hearing." Young v.Town Planning and Zoning Commission, 151 Conn. 235, 245 andWhittaker v. Zoning Board of Appeals, 179 Conn. 650, 654 (1980).
Lastly, regarding the issue of the main campus of Sacred Heart University being in Fairfield, and the proposed classroom-dormitory being in Bridgeport, the Court has reviewed the decision and adopts the reasoning in Dale v. Zoning Hearing of Board of Tredyffrin, T.P.,91 Pa. Commw. 220 (1984), 416 A.2d 1321, 1322, which not only held that dormitories were a part of a college, but also held, where a dormitory was located in one municipality and the balance of the campus in another, it was the entire institution which constituted the educational use, and therefore, the dormitory was a permitted "educational use."
The Court hereby concludes that the regulations support the Zoning Board of Appeals's decision, that the proposed dormitory-classroom building is a use clearly incident to the conduct of a university, which use is a permitted use under Chapter 4 § 2 (e) of the Bridgeport Zoning Regulations. Said building does not constitute an accessory use or accessory building as defined in Chapter 14, § 1 of the zoning regulations.
Accordingly, for the reasons set forth, the appeal by the plaintiffs is dismissed.
ARNOLD, J.